W. A. SCHEMMER, d/b/a W. A. SCHEMMER CONSTRUCTION COMPANY, appellant, v. IOWA STATE TAX COMMISSION (members), appellees.

No. 50608.

(Reported in 117 N.W.2d 420)

OCTOBER 16, 1962.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, and Maurice E. Stark, of Fort Dodge, for appellant.

Evan Hultman, Attorney General, William E. Adams and John M. Stull, Assistant Attorneys General, all of Des Moines, for appellees.

LARSON, J.—This is an appeal from a district court judgment dismissing plaintiff's petition challenging the findings, rulings and order of the State Tax Commission assessing against him tax and penalty under the provisions of chapter 422 of the 1958 Code. It involves two questions: (1) whether certain sales were made in Nebraska or Iowa, and (2) whether under the circumstances sales tax was due on his cost of transportation. The trial court held for defendant on both issues. We think further proceedings are necessary before the first issue can be equitably determined, but agree with the court on the second.

Most of the relevant facts were stipulated and there is little disagreement as to them. W. A. Schemmer, d/b/a W. A. Schemmer Construction Company, plaintiff during the period involved, was engaged in quarrying and selling rock in various forms near Logan, Iowa. Under contracts such as Exhibit "6", he furnished many tons of Riprap stone to general contractors who were doing government work on the Missouri River. Under these agreements he agreed to furnish rock, meeting certain specifications f.o.b. barges at designated spots on the river. He was to be paid a fixed sum for each ton so delivered. In the exhibit it was $2.50 per ton for 30,000 tons, and $2.20 for the balance.

Following an audit of his books by the State Tax Commission representatives in 1953, it was found a number of sales had been made upon which sales tax had not been paid, and that in a number of instances the taxpayer's sales price included the cost of transporting the goods to the purchaser, but he had failed to collect or pay sales tax on the transportation cost thereon. As sales tax on this item had not been previously imposed, plaintiff

objected and a hearing was had before the State Tax Commission. It found this taxpayer, during the period from April 1, 1953, through March 31, 1957, had made "sales within the State of Iowa on which sales tax was not collected" and that in a number of instances his "sales price included the cost of transporting the goods to the purchaser", but that he had "collected sales tax only on the cost of the goods so delivered", and that deficiency was created and "there is presently owing on said assessment taxes in the amount of $6667.50 plus statutory penalty in the amount of $1507.04." It was concluded that all sales referred to in the first finding "are subject to Iowa Sales Tax", and that all sales in the latter finding under section 422.43 of the Code and Rule No. 41, 1962 I. D. R., page 562, of the Tax Commission are subject to an additional sales tax to the extent of the cost of transportation. Its order confirmed the amount found due and the penalty, and an assessment was levied in those amounts.

It appears from the record uncertainty as to where the deliveries of rock were made could only be resolved by a determination of the boundary line between Nebraska and Iowa, and that upon the survey it could be determined what sales were made in Iowa and what sales, if any, were made in Nebraska. The Tax Commission was to request a survey from the Conservation Commission, and the parties seemed to have agreed to adjust the tax assessment on that basis. Although the survey was expected before the district court hearing, it has not yet been made. It was stipulated that a memorandum report of the director of the sales tax division to the special counsel disclosed, "We have used an 1890 governmental engineer survey as our yardstick in determining the recognized boundary between Nebraska and Iowa and in doing it, an adjustment of $1145.95 in tax would apply against the unpaid liability, but no conclusions were reached on the accuracy of the 1890 survey as an earlier one was supposed to have been made and, if it is accepted, it would assumably be more beneficial to the taxpayer. We therefore have not made the $1145.95 adjustment as the boundary question is still in dispute." After the assessment disallowing any adjustment, plaintiff pursued his remedy and filed his petition in equity under the provisions of section 422.55, Code, 1958.

Under a stipulation it was agreed that plaintiff employed independent contractors to haul rock from the quarry to the users or consumers under a "hauling contract" set out in Exhibit "7", that he kept books showing the amount each trucker hauled and what sums were paid for that service by plaintiff. He contends such services were not subject to sales tax, that they were transportation services exempt under section 422.42(2), Code 1958, and that they were not a part of the gross receipts from the sale of tangible personal property.

I. All sales of tangible personal property, consisting of goods, wares or merchandise, except as specifically exempted by statute, sold at retail in Iowa to consumers or users, are subject to a sales tax of two percent. Section 422.43, Code of Iowa, 1950, 1954, 1958, 1962. The rate was raised to two and one-half percent for a temporary period in 1955. No sales tax is imposed upon transportation service as such. In fact the gross receipts from "the sales, furnishing or service of transportation service" are specifically exempt from such tax. Section 422.45(2), Code of Iowa, 1950, 1954, 1958, 1962. In addition, Rule No. 41, supra, of the State Tax Commission, provides in part: "Freight, delivery and other transportation charges. Where a seller supplies tangible personal property from stock, the transportation charges for shipment or delivery from the seller to the consumer or user, shall become part of the purchase price on which sales tax is computed, except and unless such delivery or transportation charges are billed separately."

It is appellant's contention here that the taxing and exemption statutes are clear and unambiguous, that they impose no tax on charges for transportation, and that any such construction by the Tax Commission thereof in Rule No. 41 was unwarranted. It is true sometimes attempts to construe a Code section result in greater ambiguity, but under our decisions on these sections we ourselves have distinguished those transportation charges which are subject to a tax from those which are not. Dain Mfg. Co. v. Iowa State Tax Commission, 237 Iowa 531, 22 N.W.2d 786; City of Ames v. Iowa State Tax Commission, 246 Iowa 1016, 71 N.W.2d 15; Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 107 N.W.2d 553.

■ II. If the sale of tangible personal property is separate from the sale of transportation service, although related, and is so understood and agreed by the parties to the transaction, the sale of transportation service is not subject to the sales tax. Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, supra. The commission's reference to separate billing in Rule No. 41 would, of course, be applicable only when there were two distinct sales, and the billings would amount to little more than evidence such was the agreement between the parties. Our decision here is not placed upon that rule in imposing the tax even if that construction was given to it. However, in passing, we may say its apparent purpose was to require separate billing when the taxpayer contends two sales were made, one for the property and one for the transportation service. It really related to proof of a material fact acceptable to the commission. Clearly, unless the sales are separate and distinct, the keeping of records of transportation costs separate from other costs to the seller of tangible personal property such as we have here would not relieve the transaction from a sales tax.

In Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, supra, ready mixed concrete was offered for sale at a certain price per yard, a delivered price was never quoted, but transportation service was offered at a certain price per yard-mile. Thus the seller offered tangible personal property, the cement, and also transportation of it, a service to those in that locality, as two separate transactions. They were sold and billed as separate sales. While the price of concrete remained fixed, the price for transportation services varied with the distance hauled. Customers were so advised, and under those circumstances we held no sales tax was imposed upon the transportation items. While we placed that decision upon the clearly express provision of the statute exempting from the sales tax gross receipts from sales of transportation service (section 422.45(2)), yet we might well have found them to be services not subject to the sales tax. They were not commingled.

■ In the case before us no such circumstances appear. While the two items might have been the subject of separate sales, they in fact were a part of the same transaction. The con-

tract clearly required the plaintiff to produce and deliver crushed rock aboard barges at specified localities. The price agreed upon was so much per ton of rock delivered, and there was no separate quote for crushed rock or for transportation. Even the appellant believes no sale was contemplated until delivery had been made, for he contends those deliveries of rock made in Nebraska were not sales in Iowa. It is true, for additional hauls, an agreement appears which would add six cents per ton mile to the price per ton. But this seems to strengthen the state's contention that there was but one sale, that of crushed rock delivered on board the user's barges, and that one price for such tangible personal property so delivered was contemplated by those parties. We must conclude the contract between the parties was clearly in terms of a single sale of delivered building material (section 422.42(10)), and does not admit of two sales, one of rock and the other of transportation.

III. The Iowa sales tax is computed upon "gross receipts" or the total amount of the sale as contemplated by the parties. Section 422.42(6) of the Code; Dain Mfg. Co. v. Iowa State Tax Commission, supra, 237 Iowa 531, 22 N.W.2d 786; City of Ames v. Iowa State Tax Commission, supra, 246 Iowa 1016, 71 N.W.2d 15; Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, supra, 252 Iowa 500, 107 N.W.2d 553.

In Dain Mfg. Co. v. Iowa State Tax Commission we said at page 540 of 237 Iowa, page 792 of 22 N.W.2d: "The purchase price depends on the contract between the parties. The contract might be such that transportation and delivery charges would be included * * *." The express intention of the parties as to when and where the sale is made is most important, if not controlling, in such matters.

In City of Ames v. Iowa State Tax Commission, supra, the City of Ames purchased material f.o.b. Ames from a manufacturer in Alabama. The city paid the freight charges, deducted that amount from the price remitted to the seller, denied liability for the use tax on the transportation costs paid separately by it. In holding the tax applicable to the entire amount, including transportation expenses, we pointed out the evidence showed that the bid accepted by the city named a price for the pipe f.o.b.

Ames. Payment of the freight charges, we said, "amounts to no more than payment of the agreed price in two installments. If the purchase price had been for a fixed amount f.o.b. Birmingham, the buyer would have been required to pay the freight, and this charge would not have been a part of the amount paid for the goods", citing Dain Mfg. Co. v. Iowa State Tax Commission, supra.

While that case involved the use tax under chapter 423, and especially section 423.2 which imposes the use tax upon "the purchase price of such property", we think the same reasoning is equally applicable to the sales tax upon the "gross receipts from all sales of tangible personal property" (section 422.43), especially where transportation is included in the seller's bid accepted by the buyer. Where two separate sales are agreed upon as in the Ready Mixed Concrete case, of course the sale of transportation does not become a part of "gross receipts" of the rock sale. Under the cited authorities we are satisfied the trial court was correct in holding the total gross receipts of the sale and delivery of rock in Iowa under such contracts were subject to the Iowa sales tax even though it was possible to separate and distinguish the transportation costs from those incurred in quarrying and crushing the rock.

IV. In view of our holding above, it seems unnecessary to consider whether by its Rule No. 129 the commission has granted undertakers an advantage over others in reporting gross sales receipts which involve both tangible personal property and services which are not taxable. It is sufficient to say, if there is no justification for such a rule it will be struck down when properly challenged, and will stand or fall upon its own merits.

V. Taxpayer-appeals from State Tax Commission's decisions on disputed assessments are tried in equity, and the district court must hear and determine anew all relevant questions submitted to it on the appeal. Either side may thereafter appeal to the supreme court as in other suits in equity. In those appeals the burden of proof is placed upon the taxpayer. Section 422.55, Code, 1958, 1962.

Here if the commission's decision that all of plaintiff's sales were in Iowa and none was in Nebraska was based upon the

1890 boundary survey, as it apparently was, then it was factually in error. Then, too, it is quite evident in this record that the parties contemplated the matter would be settled by a new survey by the Conservation Commission which had been requested by the Tax Commission itself, and that thereafter an adjustment would be made for all sales made and delivered on barges on the Nebraska side of the boundary so established. It seems evident that the commission's consideration of an 1890 survey was improper, for a much later boundary line was established by chapter 306 of the Fiftieth General Assembly and was approved by an Act of Congress in 1943. Pages xc, xci, xcii, Code of Iowa, 1958, 1962. It is also clear the commission gave no consideration to the line so established and that no adjustment was given the taxpayer in its order of assessment even though it seemed to recognize merit in his contention. The trial court affirmed the commission's decision, but apparently gave no consideration to the place of sale issue. In fact, this question seems to have been held in abeyance by consent of the parties pending a survey and was not presented to the trial court. If that is so, before the true and correct amount of the assessment can be determined or the assessment is affirmed by the courts, we think that issue should be decided on its merits, and that equity and good conscience here require such a review. Perhaps there was no burden upon the defendant to prove the boundary in the appeal, and perhaps that obligation was not performed by the taxpayer, but in light of the evident arrangement between the parties, and in the interest of justice, we think that issue now must be determined either by a written agreement of the parties or by a hearing before the district court in which it shall be the taxpayer's burden to establish the sales he contends were made by delivery in Nebraska. For proceedings to determine that issue, the matter is remanded to the district court with directions to grant the taxpayer a reasonable time to secure and produce a proper survey showing the established boundary at the times of sales involved herein. Any adjustment in the assessment found proper should then be made.—Affirmed in part and remanded for further proceedings as directed herein.

All JUSTICES concur.